# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

TYRONE DWAYNE LESTER,

      Petitioner,

-vs-                                    Case No.  8:04-CV-1429-T-30MAP

JAMES R. MCDONOUGH[1],

      Respondent.

_____/

## ORDER

     Petitioner, a State of Florida inmate proceeding *pro se*, initiated this cause of action by filing a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. §2254 challenging his 1999 conviction for robbery with a weapon entered by the Tenth Judicial Circuit Court, Polk County, Florida (Dkt. 1).  Subsequently, Petitioner filed his Amended Petition for Writ of Habeas Corpus ("amended petition")  (Dkt. 5). Respondent has filed a response to the amended petition (Dkt. 11), and Petitioner has filed a reply thereto (Dkt. 10).  The matter is now before the Court for consideration on the merits of the amended petition. An evidentiary hearing is not required for the disposition of this matter. Rules Governing Section 2254 Cases 8(a). A recitation of the procedural history of Petitioner's criminal conviction is not

---

[1] James McDonough, Secretary of the Florida Department of Corrections, is substituted as the proper party respondent for James v. Crosby, Jr., pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

necessary to the resolution of his habeas claims because Respondent does not dispute the timeliness of the amended petition or assert that the claims are not exhausted in state court.

## Standard of Review

Pursuant to 28 U.S.C. § 2254(a), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), enacted and effective on April 24, 1996,  "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a). Where a state court initially considers the issues raised in the petition and enters a decision on the merits, § 2254(d) governs the review of those claims. *See Penry v. Johnson,* 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003).

Habeas relief may not be granted with respect to a claim adjudicated on the merits in a state court unless the adjudication of the claim:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law,  as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented  in the State court proceeding.

28 U.S.C. § 2254(d). *Price v. Vincent*, 538 U.S. 634, 638-39 (2003); *Clark v. Crosby*, 335 F.3d 1303, 1308 (11th Cir. 2003). Even where a state court denies an application for post-conviction relief without written opinion, in this circuit that decision is entitled to the same

deference as if the state court had entered written findings to support its decision.  *See Wright v. Sec. of Dept. of Corrs*., 278 F.3d 1245, 1255  (11th Cir. 2002).

Finally, a state court's factual finding is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence.   28 U.S.C. § 2254(e)(1); *Henderson*, 353 F.3d at 890-91.

## Discussion

Since Petitioner's conviction was entered after AEDPA was enacted, his petition is subject to the provisions thereof. Where, as here, a state court initially considered the issues raised in the petition and entered a decision on the merits, § 2254(d) governs the review of the petitioner's claims.  *See Mobley v. Head,*  267 F.3d 1312, 1316 (11th Cir. 2001).

Petitioner raises eight claims.  Having been raised by Petitioner on direct appeal, his Rule 3.850 proceedings, or his state petition for writ of habeas corpus, the claims are properly exhausted.

**Ground One**

Petitioner first argues that the trial court erred when it denied his motion to suppress his confession.  Petitioner asserts that his confession was not voluntary because he made the confession after he invoked his Fifth Amendment[2] right to remain silent[3], and the State did

---

[2] Although in his response Respondent treats Petitioner's argument as a Fourth Amendment claim (Dkt.11 at 8-9), it is apparent that Petitioner raises a Fifth Amendment right to remain silent claim in his amended petition (Dkt. 5 at 8-8A).

[3] In his direct appeal of his conviction, Petitioner only claimed that the police did not honor his right to remain silent; he did not claim that the police failed to honor his right to counsel.  (Dkt. 12, Ex. 3 at 2-17).

not demonstrate that the confession was voluntary.

Petitioner claims that at one time Detective Jones informed Detective Purdue that Petitioner did not want to speak to him. Then, Petitioner asserts that at a later date Detective Jones subsequently called Detective Purdue and informed him that Petitioner did want to speak with him. Petitioner thereafter made his confession to Detective Purdue. However, he argues that the State failed to demonstrate at the hearing on his motion to suppress his confession that his confession was voluntary, and he claims it was not voluntary because he had, on two previous occasions, invoked his right to remain silent.

The record reveals Petitioner testified that prior to July 5, 1996, the day he spoke to Detective Purdue and confessed that he was involved in the robbery, he twice told Detective Jones that he did not want talk about the robbery. On both occasions Detective Jones immediately honored Petitioner's request to remain silent and ceased talking with him. Approximately one month after Petitioner last spoke with Detective Jones, Detective Purdue came to speak with Petitioner. Detective Purdue read Petitioner his *Miranda* warnings, and on this occasion Petitioner waived his rights to remain silent and to an attorney and gave his statement regarding the robbery to Detective Purdue. (Dkt. 12, Ex. 6, Vol. I at 105-119; Vol. II at 132-153).

At trial the following exchange occurred between the prosecutor and Detective Purdue:

Q.     What is your current assignment?

A.     I'm a criminal investigator within the police 'department at the Auburndale Police

       Department.

Q.     Did you become involved in a robbery investigation of a Kash & Karry on

       Havendale Boulevard back in April of 1996?

A.     Yes sir.

Q.     When was it that you became involved?

A.     The robbery occurred on the 8th of April and I became involved on the 9th of

       April.

Q.     And were you the so-called lead investigator in this case?

A.     Yes sir.

Q.     Okay. As a result of that investigation, did you ever have occasion to come into

       contact with one of the suspects in this case, Tyrone Lester?

A.     Yes sir, I did.

Q.     What date did you come into contact with Mr. Lester?

A.     On the 5th of July 1996.

Q.     And did you speak with Mr. Lester regarding his knowledge of the robbery at the

       Kash 'N Karry?

A.     Yes sir, I did.

Q.     Okay. Did Mr. Lester know about the robbery?

A.     Yes sir, he did.

Q.    Okay. Prior to discussing the robbery with Mr. Lester, did you have occasion to advise him of his rights?

A.    Yes sir.

Q.    Detective Perdue, I'm going to show you what has been marked as State's Exhibit No. 9 for identification and ask you if you recognize what that is?

A.    Yes sir, I do. My signature's on it.

Q.    Okay. What is that?

A.    This is a Miranda Warning or Constitutional Rights Warning for Tyrone Dwight Lester.

Q.    Did you read that to him?

A.    Yes sir, I did.

Q.    Can you read into the record the rights as you read them to the defendant on that day?

A.    Yes sir, I can. The first right is you have the right to remain silent. Do you understand?  His answer was yes.

The second right: If you do say anything, we can and will use against you in a court of law. Do you understand? He advised yes.

The third right was you have a right to have an attorney and to have him present at any time you wish to talk with us. Do you understand? He answered yes.

The fourth right: If you cannot afford an attorney, one will be furnished to represent you before we question you. Do you understand that? He answered the question yes.

The fifth right: You may stop answering questions or discussing the matter with us

at any time. Do you understand? He again answered yes.

The sixth right: Do you understand each of these rights as I have explained them to you? He answered yes.

The seventh: With these rights in mind, do you wish to talk with me now or talk with us now? He answered sure.

Then I had him sign it saying that I have read and understand all of the above rights and he signed it Tyrone Lester and I witnessed it, Detective R. T. Perdue.

Q.     Did you also sign it?

A.     Yes sir.

***

Q.     When you spoke with Mr. Lester, did he appear to be under the influence of any alcohol or narcotic drugs?

A.     No sir.

Q.     Okay. Did you threaten him in any way?

A.     No sir.

Q.     Did you promise him anything?

A.     No sir.

Q.     Did you coerce him in any way?

A.     No sir.

Q.     Was he cooperative?

A.     Yes sir.

(Dkt. 12, Ex. 2, Vol. III at 235-239).

"[T]he admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored.' *Michigan v. Mosley*, 423 U.S. 96, 104 (1975). The record reveals that Petitioner's "right to cut off questioning" was fully respected. On the two occasions Detective Jones attempted to question Petitioner regarding the robbery, he immediately ceased questioning Petitioner after Petitioner told him he did not wish to speak about the robbery. (Dkt. 12, Ex. 6, Vol. I at 105-117). At some time prior to July 5, 1996, when Detective Perdue drove to the jail to speak with Petitioner, Detective Jones told him that Petitioner did not want to talk with him at that time, and he did not attempt to speak with Petitioner but got back in his car and drove away. (Dkt. 12, Ex. 6, Vol. II at 264-266).

Approximately one month after Detective Jones last met with Petitioner, Detective Perdue met with Petitioner, read him his *Miranda* rights, and Petitioner waived those rights and freely provided his statement regarding the robbery to Detective Perdue. *Miranda* does not "create a *per se* proscription of indefinite duration upon any further questioning by any police officer on any subject, once the person in custody has indicated a desire to remain silent." *Mosley, 423 U.S. at 102-103.* In the present case, approximately one month had passed from the last time Petitioner stated he did not want to talk about the robbery, Petitioner gave his statement to a different interrogator, i.e., Detective Perdue instead of Detective Jones, and Petitioner does not allege that Detective Perdue threatened him or

coerced him into making the statement. After a defendant asserts his right to remain silent "law enforcement officials are required to cease questioning the defendant but may resume the interrogation at some later time." *United States v. Bosby*, 675 F.2d 1174, 1182 (11th Cir. 1982). "[A] suspect's request to cut off questioning serves as a complete bar to any questioning related to the subject of the initial interrogation for a 'significant period of time' after the request." *Christopher v. Florida*, 824 F.2d 836, 844 (11th Cir. 1987); *citing United States v. Hernandez*, 574 F.2d 1362, 1369 (5th Cir. 1978). The record indicates that a sufficient amount of time elapsed, approximately one month, for Petitioner to have rationally considered his earlier refusal to talk about the robbery.

The record reveals that the interrogators scrupulously honored Petitioner's right to cut off questioning, and the procedure employed by Detective Perdue fully comported with Petitioner's *Miranda* rights. The voluntariness inquiry turns on whether the confession was the product of a free and deliberate choice rather than intimidation, coercion or deception, *see Moran v. Burbine*, 475 U.S. 412, 421 (1986), and focuses on police overreaching, *see Colorado v. Connelly*, 479 U.S. 157, 170 (1986) (a defendant's perception of coercion, which is solely caused by his unique mental status, is not a factor). Both of these inquiries are based upon the totality of the circumstances. *See Moran*, 475 U.S. at 421. No police impropriety is apparent in the record.

Petitioner fails to point to clear and convincing evidence which rebuts the presumption of correctness accorded the finding of voluntariness implicit in the trial court's denial of the

motion to suppress his confession.  Thus, Petitioner has failed to demonstrate by clear and convincing evidence that the state court's decision is contrary to or an unreasonable application of clearly established Supreme Court law or an unreasonable determination of the facts in light of the evidence.  *See* 28 U.S.C. 2254(d).  Petitioner has not established that he is entitled to relief on this claim.

**Grounds Two through Seven - Ineffective Assistance of Counsel**

In grounds two through seven, Petitioner asserts that his counsel provided ineffective assistance of counsel.  To establish a prima facie claim of ineffective assistance of counsel at trial, Petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Deficient performance is performance which is objectively unreasonable under prevailing professional norms.  *Id.* at 688. Prejudice results when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

"[T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776 (1987)). Because the ultimate resolution of ineffective assistance of counsel claims is a mixed question of law and fact, *Thompson v. Haley*, 255 F.3d 1292, 1297 (11th Cir. 2001); *Meeks v. Moore*, 216 F.3d 951, 959 (11th Cir. 2000), the presumption of correctness contained in § 2254(e)(1) does not

apply to this determination. *Parker v. Head*, 244 F.3d 831, 835-37 (11th Cir. 2001). State court findings of historical facts made in the course of evaluating an ineffectiveness claim are, however, subject to a presumption of correctness under 28 U.S.C. § 2254(e) unless the petitioner demonstrates by clear and convincing evidence that they are incorrect, *see Williams v. Taylor,* 529 U.S. 362, 412-13 (2000). *See also* §2254(e)(1). Finally, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)).

The trial court set forth the correct standard of review for an ineffective assistance of counsel claim (Dkt. 12, Ex. 6, Vol.II at 236-237).[4] Thus, to be entitled to relief under § 2254, Petitioner must establish that the trial courts's application of the *Strickland* standard in reaching the determination that the claims raised in his Rule 3.850 motion lack merit was objectively unreasonable or that the decision "was based on an unreasonable determination of the facts in light of the evidence presented." *See* 28 U.S.C. § 2254(d).

---

[4] Although in its first order summarily denying Petitioner's 3.850 motion the state trial court failed to cite *Strickland* as the applicable legal standard for analysis of Petitioner's ineffective assistance claims, an explicit citation is not required. A state court need not cite Supreme Court precedent, or even be aware of it, so long as the decision is consistent with the precedent. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002); Parker v. Sec'y of Dep't of Corr. 331 F.3d 764, 775-76 (11th Cir. 2003). In Florida, *Strickland* governs evaluation of ineffective assistance of counsel claims. *Walls v. State*, 926 So.2d 1156 (Fla. 2006).

**Ground Two**

In Ground Two, Petitioner contends that trial counsel rendered ineffective assistance when she failed to request jury instruction 2.04(a)[5] which concerns expert witness testimony. Petitioner argues that he was deprived of a fair trial because the jury "highly regarded" the testimony of the State's expert witness, the crime lab technician, and jury instruction 2.04(a) would have informed the jury that "like other witnesses, you may believe or disbelieve all or any part of an expert's testimony." The trial court found as follows in rejecting this claim:

> Claim One: trial counsel rendered ineffective assistance of counsel by failing to request jury instruction 2.04(a) regarding expert witnesses. The Court finds that claim number one is without merit. The jurors were appropriately instructed that a juror may believe or disbelieve all or any part of the evidence or testimony of any witness (record at 343). The Defendant suffered no prejudice from trial counsel's lack of objection. Defendant is not entitled to relief on this claim.

(emphasis in original) (Dkt. 12, Ex. 004, at 22).

_____

[5] That instruction reads:

2.04(a) EXPERT WITNESSES

Expert witnesses are like other witnesses, with one exception -- the law permits an expert witness to give his opinion.

However, an expert's opinion is only reliable when given on a subject about which you believe him to be an expert.

Like other witnesses, you may believe or disbelieve all or any part of an expert's testimony.

Florida Standard Jury Instructions in Criminal Cases § 2.04(a).

The instruction that was given, "that a juror may believe or disbelieve all or any part of the evidence or testimony of any witness," was adequate for the jury to assess the credibility of the State's expert witness.   It was not unreasonable for the state court to conclude that Petitioner failed to establish that his counsel performed unreasonably by failing to request jury instruction 2.04(a), or that there was a reasonable probability that the result of the trial would have been different if the jury had been given the instruction. Therefore, Petitioner is not entitled to federal habeas relief on this claim.

**Ground Three**

In Ground Three, Petitioner asserts that his attorney was ineffective because she failed to adequately inform him of the consequences of being sentenced as a habitual offender. Petitioner claims that had his attorney explained to him that as a habitual offender he could receive a life sentence, he would have accepted the State's pre-trial offer of a term of years.

The trial court held an evidentiary hearing in which this issue was addressed.  At the hearing Petitioner's attorney testified that she discussed with Petitioner that the State was seeking habitual offender sanctions against him if he were convicted, and also discussed with him the habitual offender statute and how he qualified as a habitual offender. (Dkt. 12, Ex. 6, Vol.II at 194-197).  She further attested that she sent her partner to the jail to discuss the issue with Petitioner.  (Id. at 194).  Finally, she testified that despite her counsel with Petitioner regarding possible habitual offender sanctions, his position was that if he were convicted, he would have the conviction overturned on appeal.  (Id.).

Following the evidentiary hearing, the state court rendered its order denying Petitioner's 3.850 motion and stated in pertinent part:

> First, Lester contends that counsel failed to advise him of the consequences of being habitualized if convicted. Testimony from his original trial counsel indicates that on more than one occasion she discussed with him the consequences of habitualization. Indeed, she was sufficiently concerned about this matter that she sent her law partner to the jail to discuss the issue with Lester. The court finds that Lester was put on notice by trial counsel of the effects of habitualization. He has failed to prove the first prong on the <u>Strickland</u> test.

(Dkt. 12, Ex. 6, Vol.II at 236).

Petitioner has not shown, by clear and convincing evidence, that the state courts' denial of this claim was an unreasonable application of *Strickland*. Therefore, Petitioner has not met his burden of showing that defense counsel was ineffective for failing to counsel him regarding habitual offender sanctions. Ground Three does not warrant habeas corpus relief.

**Ground Four**

In Ground Four, Petitioner claims that his attorney was ineffective when she failed to call Detective Jones as a witness at the hearing on Petitioner's motion to suppress his confession. Petitioner claims that Detective Jones would have testified that Petitioner told him that he did not want to speak to him or any other officer without an attorney, and he coerced Petitioner into making involuntary statements regarding Petitioner's girlfriend. Petitioner argues that had Detective Jones testified at the suppression hearing, his confession would have been suppressed, and he would not have been found guilty at trial.

Because the trial court's ruling on Petitioner's motion to suppress his confession was not erroneous, it follows that Petitioner was not prejudiced on account of his trial attorney's failure to call Detective Jones at the suppression hearing.  Moreover, when Detective Jones testified at the state evidentiary hearing on Petitioner's Rule 3.850 motion, he stated that he recalled only having the one meeting with Petitioner where Petitioner told him that he did not want to talk about the robbery, and, therefore, he did not question Petitioner.  (Dkt. 12, Ex. 6, Vol. II at 63-76).  Hence, Petitioner fails to demonstrate his trial attorney's performance on this issue was deficient or prejudiced him.

**Ground Five**

In Ground Five, Petitioner maintains that his attorney was ineffective because at trial she failed to object to the introduction of his confession on the ground that the State had failed to establish a corpus delicti.[6] Petitioner argues that except for his confession, there was no evidence linking him to the crime, and, therefore, his confession should not have been admitted at trial.

Under Florida law, an uncorroborated confession alone may not be relied upon to establish the corpus delicti.  *Atkins v. Florida*, 452 So.2d 529, 532 (Fla.1984).  The state trial court summarily denied this claim and in so doing stated:

---

[6] Corpus delicti is a term which refers to the principle that it must be proven that a crime has occurred before a person can be convicted of committing the crime.  *See United States v. White*, 493 F.2d 3, 6 (5th Cir.1974).

Claim Four: trial counsel rendered ineffective assistance by failing to object to the introduction of Defendant's recorded statements into evidence, which statements were introduced before the State proved corpus delicti or a prima facie case that would tend to show that a crime was committed and the defendant is the person who committed the crime. Defendant contends that a timely objection would have secured the Court's ruling in which the State would be ordered to prove a prima facie case previous to admitting the defendant's statement. The Court finds that this claim is without merit. Florida law requires that the corpus delicti be established independently of any confession before the confession is admitted into evidence. *Franqui* v. *State*, 699 So.2d 1312 (Fla. 1997). In order to prove corpus delicti, the State must establish that a crime of the type charged was committed and that the crime was committed through the criminal agency of another. *State v. Allen*, 335 So.2d 823, (Fla. 1976). It is not necessary that the State prove that the crime was committed by the defendant for purposes of corpus delicti.

In the present case, the corpus delicti of the crime was shown independently of the confession. The State called six witnesses prior to introducing the Defendant's statement, three of whom were eye-witnesses to the crime. Each eye-witness was an employee of the Kash-n-Karry grocery store that was robbed, and each witness testified that three men entered the store on the evening in question, at least one of whom was armed with a gun. The witnesses testified that, once inside the store, at least two of the men went to the store office, one robber put the gun to the head of one of the managers, the safe was opened, money was taken, and the three men left (see attached trial testimony). This testimony clearly established the body of the crime charged (armed robbery) and was offered independently of as well as prior to any statement made by the Defendant to Detective Purdue. Consequently, the Court finds that a proper predicate for the admission of the Defendant's statement to Purdue was established and that trial counsel was not ineffective for not objecting to the introduction of the Defendant's statement for lack of the corpus delicti. Defendant is not entitled to relief on this claim.

There was ample evidence independent of Petitioner's confession proving that an armed robbery was committed.  Under the facts of this case, it cannot be said that the findings of the state courts resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

**Ground Six**

In Ground Six, Petitioner claims his attorney was ineffective because she failed to convey to him before trial the State's offer of a plea agreement of 17 years imprisonment. Petitioner states that had he known of the offer, he would have accepted it.

Petitioner raised this issue in his 3.850 motion in state court.  (Dkt. 12, Ex. 4 at 14-16). At the evidentiary hearing on the 3.850 motion, Petitioner's trial attorney testified that there was a plea offer from the State, she did discuss with Petitioner that he should consider a plea, but Petitioner's position was that if he did not win at trial he would prevail on appeal, and throughout the pendency of the case she tried to dissuade Petitioner from his position because it was a case involving a confession.  (Dkt. 12, Ex. 6, Vol.II at 212-215).

Following the evidentiary hearing the state trial court denied Petitioner's claim and stated:

Second, Lester contends that counsel failed to advise him of the last plea offer from the state made the morning of jury selection. While the trial transcript is confusing as the events surrounding the last plea offer, trial counsel testified that she did notify Lester of the plea offer and encouraged him to accept the plea because the case against him was strong. Lester rejected her advice because he believed that, even if he lost at trial, he would win on appeal. Trial counsel had filed two motions to suppress confessions in two cases pending against Lester. One of the motions was granted. The other, the one filed in this case, was denied. Lester was confident that the denial would be reversed on appeal. He was wrong. Again, Lester has failed to satisfy the first prong of the <u>Strickland</u> test.

A client must be involved in the decision of whether to accept or reject a plea offer, and failure to inform the client of the offer constitutes ineffective assistance of counsel. *See Johnson v. Duckworth,* 793 F.2d 898, 902 (7th Cir. 1986); *see also* Fla. R. Crim. P. 3.171(c)(2) (counsel must convey any offer made by the prosecution and advise the defendant on possible alternatives.). However, the record supports the trial court's findings that Petitioner's attorney informed him of the plea offer and encouraged him to consider accepting it, and Petitioner fails to present clear and convincing evidence that the trial court's findings are incorrect. Therefore, Petitioner is not entitled to relief on this ground.

**Ground Seven**

Next, Petitioner asserts that his appellate counsel was ineffective in failing to raise, on direct appeal, the issue of the prosecutor's misconduct for injecting his personal opinion during closing argument. Petitioner claims that had appellate counsel raised the issue on direct appeal, the appellate court would have remanded for a new trial. The following is the

exchange on which Petitioner's claim is based.

> [Prosecutor:] I don't believe Mr. Lester was the third person. I think he was probably, in my opinion, the evidence has shown you black male number two that went into the office after number one with the gun.

> Ms. Matis-Jackson: Your Honor, at this time, I'm going to object to the prosecutor interjecting his opinion.

> [Prosecutor]: I believe the evidence has shown that the defendant was a black male. Number two, went into the office after the first person did with the gun...

(Dkt. 12, Ex. 2, Vol. III at 330).

First, despite the fact that Petitioner's attorney raised an objection to the prosecutor's comments, the issue was not preserved for appellate review because Petitioner waived his objection by failing to obtain a ruling on the objection. *See, Newton v. South Fla. Baptist Hosp.*, 614 So. 2d 1195, 1196 (Fla. 2nd DCA 1993)(a party's failure to secure a ruling on an objection waives it). Therefore, appellate counsel's performance was not deficient in failing to raise an issue on appeal that was not preserved for appellate review.

Second, Petitioner does not show that appellate counsel's failure to raise the issue on appeal prejudiced him. Whether a petitioner is entitled to relief on the ground of improper prosecutorial argument depends on "whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Kennedy v. Dugger*, 933 F.2d at 914 (citing *Darden v. Wainwright*, 477 U.S. 168, 181, 91 L. Ed. 2d 144,

106 S. Ct. 2464 (1986)). An improper argument rises to this level when "there is a reasonable probability that, but for the prosecutor's offending remarks, the outcome of the guilt or sentencing proceeding would have been different." *Id*. (citing *Williams v. Kemp*, 846 F.2d 1276, 1283 (11th Cir. 1988)).

This Court cannot conclude that Petitioner is entitled to relief under this standard. Instead, considering the totality of the circumstances, the challenged arguments did not render the trial fundamentally unfair.  Petitioner has not established that appellate counsel's performance was deficient or prejudiced him, and, therefore, he is not entitled to federal habeas relief on Ground Seven.

**Ground Eight**

Petitioner's final argument is the state post-conviction court erred when it denied his 3.800 motions to correct an illegal sentence in which he asserted that he was improperly sentenced as an Habitual Violent Felony Offender.  Specifically, Petitioner asserts that he was entitled to relief because during the sentencing hearing the state trial court failed to orally announce him a habitual offender and failed to qualify him as such as required by state law.

First, Petitioner failed to raise this issue as a federal constitutional claim in his 3.800 motions in state court. (*See* Dkt. 12, Ex. 7 at 1-5; Dkt. 12, Ex. 8 at 1-14).  "[E]xhaustion of state remedies requires that petitioners fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its

prisoners' federal rights . . . . If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution." *Duncan v. Henry*, 513 U.S. 364, 365-66, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (internal quotation marks omitted). Moreover, Petitioner does not argue that there is an absence of available State corrective process or that circumstances render the State corrective process ineffective to protect his rights.  Hence, under 28 U.S.C.§2254(b)(1), Petitioner's claim cannot be countenanced by this Court.

Second, Petitioner's claim fails on the merits. The state trial court did not unreasonably apply Supreme Court case law or render a decision that was based on an unreasonable determination of the facts  in finding that "the [Petitioner] was both qualified and sentenced as a habitual violent offender."  (*See* Dkt. 12, Ex. 7 at 12; Dkt. 12, Ex. 8 at 31-42). Therefore, Petitioner's claim also fails under 28 U.S.C. §2254(d)(1).

### Conclusion

For the foregoing reasons, the Court finds that Petitioner has failed to establish that he is entitled to federal habeas relief.

ACCORDINGLY, the Court **ORDERS** that:

1.	The Amended Petition for Writ of Habeas Corpus (Dkt. 5) is **DENIED**.

     2.     The **Clerk** shall enter judgment against Petitioner, terminate all pending motions, and close this case.

     **DONE** and **ORDERED** in Tampa, Florida on August 21, 2007.

 

                           JAMES S. MOODY, JR.
                           UNITED STATES DISTRICT JUDGE

<u>Copies furnished to:</u>
All Parties/Counsel of Record

SA:sfc